**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONALD T. TOMASKO,

     Plaintiff,

         v.

IRA H. WEINSTOCK, P.C. et al.,

     Defendants.

NO. 3:98-CV-1978

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is an issue presented on appeal to the United States

Court of Appeals for the Third Circuit and remanded to this Court for further proceedings

consistent with that court's opinion.  *Tomasko v. Weinstock*, 255 Fed. App'x 676 (3d Cir.

2007).  The issue presented concerns Plaintiff Ronald T. Tomasko's Motion for Attorney's

Fees.  (Docs. 172.)  On August 15, 2002, this Court denied attorney's fees to both

parties.  (Doc. 123.)  Both parties appealed the denial, and on November 17, 2003 the

Third Circuit Court of Appeals remanded the Order.  *Tomasko v. Weinstock*, 80 Fed

App'x 779 (3d Cir. 2003).  On September 5, 2006, the Court again considered Plaintiff

Tomasko and Defendants Ira H. Weinstock, P.C.'s motions for attorneys fees, and

denied both motions.  (Docs. 102, 106, 158.)  Both parties appealed the Court's denial of

attorney's fees, and on November 26, 2007, the Third Circuit Court of Appeals remanded

the Order as to Plaintiff Tomasko's attorney's fees.  *Tomasko v. Weinstock*, 255 Fed.

App'x 676 (3d Cir. 2007).  For the reasons set forth below, Plaintiff Tomasko's Motion for

Attorney's Fees (Doc. 172) will be granted in part and denied in part.

**BACKGROUND**

Plaintiff Ronald T. Tomasko commenced a three (3) count action on December 7, 1998.  (Doc. 123, at 2.)  As noted in previous memoranda, the dispute in this case centered on a compensation arrangement that existed between Plaintiff and Defendants. (Doc. 100, at 11.)  A non-jury trial was held in October of 2001, and on December 18, 2001 the Court entered an Order finding that the $6100 that Defendants paid Plaintiff on January 17, 1997 was earned in 1997, and therefore, Defendants had to make appropriate contributions to the ERISA plan for the $6100.  (Doc. 123 at 2.)  The Court further concluded that Plaintiff was not entitled to anything else in form of compensation or bonuses.  (*Id.*)

After the December 2001 judgment, both parties filed cross-motions for reconsideration and/or amendment of judgments and cross-motions for attorneys' fees. (*Id.* at 1.)  On August 15, 2002, the Court noted that it did not discuss Count III in its 2001 memorandum.  (*Id.*)  The Court then concluded that Defendants breached their fiduciary duty under § 502(A)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1132(a)(1)(B) regarding the $6100 that Defendants paid on January 17, 1997, but not regarding the additional $8100 Plaintiff sought but was denied.  (*Id.*)  In addition, the Court denied both parties' motions for attorneys' fees under § 502(g) of ERISA. (*Id.*)  This decision was appealed to the Third Circuit Court of Appeals, and was remanded on November 17, 2003.  *Tomasko v. Weinstock*, 80 Fed App'x 779 (3d Cir. 2003).   The Court again considered the issue of attorneys' fees, and again denied fees for both parties.  (Doc. 158.)  The parties both appealed, and the Third

Circuit Court of Appeals affirmed the Court's decision as to Defendants' attorney's fees petition, and vacated and remanded the issue as to Plaintiff's attorney's fees.  *Tomasko v. Weinstock*, 255 Fed. App'x 676 (3d Cir. 2007).  The matter is now ripe for disposition.

## LEGAL STANDARD

Section 502(g)(1) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1). The statute itself does not offer criteria to aid a court in its exercise of discretion.  "There is no presumption that a successful plaintiff in an ERISA suit should receive an award [of attorney's fees] in the absence of exceptional circumstances."  "[T]he defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing plaintiff or plaintiff class, thus 'encourag[ing[ private enforcement of the statutory substantive rights, whether they be economic or noneconomic, through the judicial process."  *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) (quoting REPORT OF THE THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES 15 (Oct. 8, 1985), *reprinted at* 108 F.R.D. 237, 250).

The Third Circuit Court of Appeals set forth five (5) factors that a court must consider when determining whether to grant an award of attorney's fees.  *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc.*, 33 F.3d 253, 254 (3d Cir. 1994) (citing *Ursic v. Bethlehem Mines*, 719 F.2d 670,673 (3d Cir. 1983)).  The five (5) factors are:

(1)     the offending parties' culpability or bad faith;

(2)     the ability of the offending parties to satisfy an award of attorneys' fees

3

against the offending parties;

(3)     the deterrent effect of an award of attorneys' fees against the offending

parties;

(4)     the benefit conferred on members of the pension plan as a whole;

(5)     the relative merits of the parties' position.

*Id.*  Upon remanding the issue of attorneys' fees, the Third Circuit Court of Appeals

articulated that the District Court must undertake an analysis of all five (5) factors.

However, "[n]o single criterion articulated in *Ursic* is decisive.  They should be considered

in balance and relation to others."  *Vintilla v. United States Steel Corp. for Employee*

*Pension Benefits*, 642 F. Supp. 295, 296 (W.D. Pa. 1986), *aff'd* 815 F.2d 697 (3d Cir.

1987).   Therefore, the Court will analyze the five (5) *Ursic* factors as they relate to

Plaintiff Tomasko's request for attorney's fees.


**DISCUSSION**

**I.     Prevailing Party**

A prevailing party is one who succeeds on any significant issue in the litigation.

*See generally Foley v. I.B.E.W. Local 98 Pension Fund*, 271 F.3d 551 (3d Cir. 2001).

Although Plaintiff Tomasko was not successful in all aspects of this case, he was the

prevailing party as to certain claims.  Specifically, the Court previously found that

Defendants breached their fiduciary duty under § 502(A)(2) of ERISA regarding the

$6100 that Defendants paid on January 17, 1997 and that Plaintiff was entitled to a

pension plan contribution of that amount.  "Attorneys' fees may be awarded to prevailing

4

parties in actions brought under [ERISA]."  *McPherson,* 33 F.3d at 254.  But, "there is no presumption that a successful plaintiff in an ERISA suit should receive an award in the absence of exceptional circumstances."  *Id.* (citing *Ellison v. Shenango, Inc. Pension Bd.*, 956 F.2d 1269, 1273 (3d Cir. 1992)).  As Plaintiff Tomasko is a prevailing party, the Court will consider Plaintiff Tomasko's application for attorney's fees pursuant to these standards.

## II.      Bad Faith or Culpability

The first factor in determining whether to award attorney's fees in an ERISA case is the offending party's bad faith or culpability.  *McPherson*, 33 F.3d at 254.  The Court must consider whether the losing party acted with bad faith or culpability.  *Asprino v. Independence Blue Cross/Pa. Blue Shield*, Civ. A. No. 96-7788, 1998 WL 96447, at *3 (E.D. Pa. Mar. 3, 1998).  A party is not culpable simply because it did not prevail in litigation.  *McPherson*, 33 F.3d at 257.  Bad faith normally suggests an ulterior motive or sinister purpose.  *Id.* at 256.  "A losing party may be culpable, however, without having acted with an ulterior motive."  *Id.*  Culpable conduct is generally defined as conduct which is

> "blameable; censurable; . . . at fault; involving the breach of a
> legal duty or the commission of a fault. . . . Such conduct
> normally involves something more than simple negligence . . .
> . [On the other hand, it] implies that the act or conduct spoken
> of is reprehensible or wrong, but not that it involves malice or
> a guilty purpose."

*Id.* at 256-57 (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)).

Previously, this Court held that Plaintiff Tomasko acted in bad faith by misleading his employer, Defendants Weinstock, regarding his future plans of employment.

However, the Third Circuit Court of Appeals held that "when analyzing *Ursic*'s first factor, [the court should] only consider[ ] good or bad faith which ha[s] a direct bearing on the plaintiff's obtaining, or the defendant's withholding, of the ERISA benefits at issue." *Tomasko*, 255 Fed. App'x at 681-82.  The Third Circuit Court of Appeals further held that Tomasko's culpability of conduct only pertained to his behavior in changing jobs, and not to whether he had earned the disputed compensation.  *Id.* at 681.  As this conduct did not pertain to ERISA liability, it is not relevant to this first factor.  *Id.*

As Plaintiff Tomasko has not demonstrated bad faith or culpable conduct with respect to the ERISA benefits at issue, the first *Ursic* factor weighs in favor of Plaintiff for an award of fees.

### III.   The Losing Party's Ability to Satisfy a Fee Award

The second *Ursic* factor is "the ability of the offending parties to satisfy an award of attorneys' fees."  *Ursic*, 719 F.2d at 673.  As noted by the Third Circuit Court of Appeals, when considering Plaintiff Tomasko's fee petition as a prevailing party, the Court will only consider the offending party's ability to pay.  This factor focuses only on Defendant Weinstock's ability to pay.  In their brief, Defendants stated that "[t]he Defendants' ability to pay attorney's fees is really not in question, however the amount of attorney's fees sought is clearly unreasonable. . . ."  (Doc. 111, at 12.)  A reasonableness inquiry is not appropriate at this juncture; rather, the inquiry is whether the Defendants are able to satisfy a fee award.  As Defendants admit that their ability to pay is not in question, this second *Ursic* factor weighs in favor of Plaintiff for an award of fees.

### IV.     The Award's Deterrent Effect

The third factor that the Court must analyze under *Ursic* is the deterrent effect of an award of attorney's fees against the losing party.  Plaintiff argues that an award against Defendants would have a deterrent effect on Ira H. Weinstock, P.C. by discouraging a deliberate delay of payment of earned compensation to avoid pension contributions.  (Doc. 107, at 4-5.)  Plaintiff further argues that a grant of attorney's fees would deter the Defendants from utilizing novel or inconsistent plan interpretations in order to defeat a participant's expectation of compensation. (*Id.* at 5.)

In opposition, Defendants argue that there will be little deterrent effect. Defendants argue that the dispute revolved around differing interpretations of an agreement.  (Doc. 111, at 12.)  Defendants also note that this was a "unique" situation, and only occurred once in Mr. Weinstock's thirty (30) years of practice.  (*Id.*)  Defendants state that there has been no pattern of conduct, and therefore attorney's fees would not produce a deterrent effect.  (*Id.*)

The deterrent effect in this case is slight.  There is no evidence of a pattern of conduct by the Defendants.  There is no indication that such conduct occurred except in the case of the Plaintiff.  However, in the event that such a scenario arises again, attorney's fees may deter Defendant from similar actions.  Therefore, the third *Ursic* factor weighs slightly in favor of an award of attorney's fees to the Plaintiff.

### V.     Benefit Conferred on Members of the Plan

The fourth factor that the Court must consider is the benefit conferred on others by the Court's judgment.  As stated in our previous Memorandum, both Plaintiff and

7

Defendants impliedly concede that the Court's judgment did not confer a benefit on other plan participants.  (Doc. 107, at 5-6; Doc. 117, at 12.)  Because of the nature of Plaintiff's compensation agreement and position, it is unlikely that the judgment will benefit other plan members.  Accordingly, this factor is neutral, and does not weigh in favor of or against the Plaintiff's request for attorney's fees.

### VI.   Relative Merits of the Parties' Positions

The final factor entails a consideration of the relative merits of the parties' positions.  As with the first *Ursic* factor, the fact that the losing party has not prevailed does not automatically warrant an award.  *See McPherson*, 33 F.3d at 258.  In the present case, Plaintiff Tomasko prevailed on a portion of his claims, those involving the $6100.  (Mem. & Order, Aug. 15, 2002, Doc. 123, at 12.)  In contrast, Defendants prevailed on the portion of the claims involving the additional $8100.  (*Id.*)  While Plaintiff did not prevail in the entirety of his claims, he was able to show that his argument had some merit and that Defendants violated duties under ERISA.  Therefore, the final factor weighs slightly in favor of Plaintiff Tomasko, as he did prevail in a central issue before the Court.

### VII.   Balancing of Factors

In considering the five (5) *Ursic* factors, all factors are either neutral, slightly in favor, or in favor of a grant of attorney's fees to the Plaintiff.  Plaintiff has not acted with bad faith or culpable conduct with respect to the ERISA claims, which is in favor of an award.  The opposing party has not shown an inability to pay, which also favors the Plaintiff.  A slight deterrent effect on the Defendants' future behavior exists, which slightly

weighs in favor of Plaintiff's request for fees.  No benefit will be gained by other members of the plan, and therefore this factor weighs neither in favor of nor against Plaintiff's request for fees.  Finally, the relative merits weigh slightly in favor of Plaintiff Tomasko. As the five *Ursic* factors are either neutral or in favor of Plaintiff Tomasko, the Court will award Plaintiff attorney's fees.

### VII.    Calculation of Fees

The United States Supreme Court has held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984).  This amount is known as the "lodestar" figure, which is presumed to be the reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Counsel*, 478 U.S. 546, 565 (1986); *Pennsylvania v. Delaware Valley Citizens' Counsel*, 483 U.S. 711, 730-31 (1987).

_____In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).  The Court should considered the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable. *Id.*

The Court must also determine whether the number of hours spent on the litigation was a reasonable number of hours.  The Court "should review the time charged, decide

whether the hours claimed were reasonably expended for each of the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted).  Thus, a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).   Using the lodestar methodology, the Court can calculate a reasonable attorney's fee.

> A.      *"B.A.M.", "E.V.", "M.D.M.", Pamela M. Lupo and Daniel L. Sullivan*

_____As an initial matter, the fees submitted by Plaintiff include nine and four-tenths (9.40) hours of work by attorneys labeled as "B.A.M.", "E.V.", "M.D.M.", Pamela M. Lupo, and Daniel L. Sullivan.  However, no affidavits are submitted for these attorney detailing their qualifications or experience.  Furthermore, the submissions for some of these fees are conflicting, as Document 101 lists certain hours as being performed by "B.A.M." and Document 172 notes that these same tasks were performed by "E.V."  The attorneys performing these tasks are unknown to this Court.  Therefore, the Court will decline to award fees on work listed by these attorneys.

> B.      *Reasonable Rate*

> 1.      Michael A. Koranda

Attorney Michael A. Koranda submitted an affidavit detailing his experience and qualifications in support of his requested fee of one-hundred and twenty-five dollars ($125.00) per hour.  Mr. Koranda was a shareholder in the law firm of Tomasko & Koranda, P.C.  (Koranda Aff. ¶ 1, Doc. 101.)  He was admitted to the bar of the

Commonwealth of Pennsylvania in 1990, and was also admitted to practice before the United States District Court for the Middle District of Pennsylvania and the United States Court of Appeals for the Third Circuit.  (*Id.*)  Mr. Koranda acted as lead counsel for Plaintiff in this action.  (*Id.* ¶ 2.)  Mr. Koranda affirmed that the firm's standard hourly rate for Mr. Koranda was one-hundred and twenty-five dollars ($125.00) per hour.  (*Id.* ¶ 4.)  The fee petition lists one-hundred and twenty-five dollars ($125.00) as Mr. Koranda's rate through the appeals in 2006.

Defendants have not objected to the hourly rate submitted by Mr. Koranda in any of their oppositions to Plaintiff's request for attorney's fees.  Therefore, the Court will use the billing rate of one-hundred and twenty-five dollars ($125.00) per hour as the reasonable hourly rate for Mr. Koranda.

2.    Kathryn L. Simpson

Attorney Kathryn L. Simpson became involved in this case in January 2007.  She requests two-hundred and thirty dollars ($230.00) as her hourly rate.  Ms. Simpson detailed her qualifications at the June 27, 2008 oral argument on the attorney's fees petition.  Ms. Simpson has been in practice since 1978.  (Hrg. Tr. 8, June 26, 2008.)  She has previously litigated two (2) large ERISA cases, as well as other ERISA cases.  (Hrg. Tr. 8.)  She started that she has worked on ERISA cases seeking benefits against plan administrators seeking disability benefits, life insurance benefits, and similar cases.  (Hrg. Tr. 8.)  Ms. Simpson stated that she has been practicing ERISA cases, although not exclusively, since 1995. (Hrg. Tr. 9.)  Ms. Simpson informed the Court that her billing rate is two-hundred and thirty dollars ($230.00) per hour.  (Hrg. Tr. 9.)

11

Defendants do not dispute Ms. Simpson's hourly rate as unreasonable, and the Court will therefore find her fee of two-hundred and thirty dollars ($230.00) per hour to be a reasonable rate.

C.    *Reasonable Hours*

1.    Apportionment

Defendants argue that apportionment of the attorneys' fees is appropriate in this case.   Defendants request apportionment of the attorneys' fees between the successful ERISA claim and the other claims brought in this action, namely, the Pennsylvania Wage Payment and Collection Law claim. Citing Supreme Court precedent, the Third Circuit Court of Appeals has held that "where a plaintiff presents 'distinctly different claims for relief that are based on different facts and legal theories . . . work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" *Eichenlaub v. Twp. of Indiana*, 213 Fed. App'x 218, 222 (3d Cir. 2007) (non-precedential) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983)).  The Third Circuit Court of Appeals has further held that attorneys' fees may be reduced for time "spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Therefore, the Third Circuit Court of Appeals requires apportionment of distinct claims when one of those claims is unsuccessful.  Plaintiff states in his brief that he is willing to accept a ten percent (10%) reduction of the amount requested in accordance with *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989).  This

reduction would reflect the unsuccessful state law claim for an additional eight-thousand, one-hundred dollars ($8100.00) and Plaintiff's ERISA claim seeking contribution for those additional wages.  Plaintiff argues that a ten percent (10%) reduction is warranted, as the overwhelming majority of the case focused on the question of the ERISA contribution regarding the six-thousand one-hundred dollars ($6100.00).  Plaintiff also noted that counsel did not submit a fee request for work on the Rule 52 or 59 motions, for work on the opposition to Defendants' motion for reconsideration, or work on the appeal to the Third Circuit Court of Appeals.  (*See* Doc. 102.)  Although Plaintiff's initial fee request did not include these hours, his present request does include them.  His argument that this particular formulation of fees, by including a ten percent (10% reduction), is reasonable is moot.

In their request for apportionment, Defendants disagree with the Plaintiff as to the focus of the litigation.  Defendants argue that the overwhelming majority of the case was spent on the determination of Tomasko's state law claim for wages.  Defendants point to Plaintiff's billing itemization, and argue that the majority of the work is attributable to the Plaintiff's state law claims.

In *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91 (2d Cir. 2006), the Second Circuit Court of Appeals considered the reduction of the fee award by the District Court in an ERISA case.  In *McDonald*, the District Court made a twenty-five percent (25%) reduction in fees to reflect work on unsuccessful claims not sufficiently related to the prevailing claim.  *Id.* at 97.  The court also reduced fees by an additional five percent (5%) for record keeping and five percent

13

(5%) for unnecessarily multiplying the proceedings. *Id.*   Upon review of the record, the

Second Circuit Court of Appeals found that the District Court did not err in reducing the

fee by a total of thirty-five percent (35%). *Id.*

In contrast, the Third Circuit Court of Apepals in *Gornini v. AMP, Inc.*, 117 Fed.

App'x 193 (3d Cir. 2004) (non-precedential) considered whether the District Court

correctly refused to apportion attorney's fees on the basis of unsuccessful claims.

Quoting *Hensley*, the Third Circuit Court of Appeals noted that:

> In [many] cases the plaintiff's claims for relief will involve a
> common core of facts or will be based on related legal
> theories. Much of counsel's time will be devoted generally to
> the litigation as a whole, making it difficult to divide the hours
> expended on a claim-by-claim basis. Such a lawsuit cannot be
> viewed as a series of discrete claims. Instead the district court
> should focus on the significance of the overall relief obtained
> by the plaintiff in relation to the hours reasonably expended on
> the litigation.

*Gorini*, 117 Fed. App'x at 197 (quoting *Hensley*, 461 U.S. at 435).   In *Gorini*, the court

found that the unsuccessful claims were closely related to the successful claims, and that

they arose from a common core of facts. *Id.*

In this case, the three (3) claims were distinct.  The first claim was a state law

claim for compensation of eight-thousand, one-hundred dollars ($8100.00).  The second

claim was for ERISA contribution on that eight-thousand, one-hundred dollars

($8100.00).  Finally, Plaintiff brought a claim for ERISA contribution on six-thousand, one-

hundred dollars ($6100.00) of compensation.  The facts regarding each of these three (3)

claims were not so distinct that they cannot be apportioned.  Therefore, the Court will

apportion the successful claim from the unsuccessful claims with respect to trial work.

    2.    Michael A. Koranda

      The submissions by Plaintiff demonstrate work in the amount of five-hundred and thirty-nine and eight-tenths (539.80) hours over the course of the litigation and appeals. Mr. Koranda's time entries post-trial begin on December 20, 2001.  (Doc. 172.) Beginning on December 20, 2001, Mr. Koranda's time entries total two-hundred and eighteen and six-tenths (218.60) hours.  The time prior to December 20, 2001, therefore, is three-hundred and twenty-one and two-tenths (321.20) hours.

Defendants made no specific objections to the hours listed by Attorney Koranda. Rather, the Defendants generally argue that the fee should be apportioned because the Plaintiff was not successful on all claims.  The Court previously discussed apportionment, noting that it would be appropriate on the trial-related time entries. Therefore, the three-hundred and twenty-one and two-tenths (321.20) hours submitted for work on the three (3) claims will be apportioned.  As the Plaintiff prevailed on only one (1) claim, the Plaintiff will receive fees for one-third (1/3) of the three-hundred and twenty-one and two-tenths (321.20) hours submitted prior to December 20, 2001.  Plaintiff will receive fees for one-hundred and seven and one-tenths (107.10) hours for this work.

The time submitted by Mr. Koranda for hours after trial will not be apportioned based upon the theory that one claim was successful while the others were not.  The appeals in this case affirmed the Court's judgment with respect to Plaintiff's entitlement to the ERISA contribution of six-thousand, one-hundred dollars ($6100.00).  Plaintiff was also successful on appeal to the extent that the Third Circuit Court of Appeals remanded the case for consideration of attorney's fees.

Defendants rely on the apportionment argument as to why the fee should be

15

reduced.  Defendants make no other arguments as to why the hours after trial should be reduced.  Therefore, the Court will not apportion the post-trial submissions of time, and Mr. Koranda will receive fees for the two-hundred and eighteen and six-tenths (218.60) hours worked after trial.

2.      Kathryn L. Simpson

Attorney Simpson has submitted fees totaling nineteen and two-tenths (19.20) hours for her work, which consisted of work on the 2007 appeal.  Defendants do not challenge the number of hours worked by Ms. Simpson as unreasonable.  Therefore, the Court finds that nineteen and two-tenths (19.20) hours of work on the 2007 appeal is reasonable. (Doc. 179.)

*D.      Lodestar Calculation*

1.      Michael Koranda

Mr. Koranda's lodestar is calculated by multiplying the reasonable rate times the reasonable number of hours.  The Court previously apportioned the hours submitted prior to December 20, 2001 by two-thirds (2/3), permitting a reasonable number of hours in the amount of one-hundred and seven and one-tenth (107.10) hours.  The Court also permitted the entire two-hundred and eighteen and six-tenths (218.60) hours submitted for work after trial.  In total, the Court granted a total of three-hundred and twenty-five and seven-tenths (325.70) hours for work by Mr. Koranda.  This number of hours times the hourly rate of one-hundred and twenty-five dollars ($125.00) totals forty-thousand, seven-hundred and twelve dollars and fifty cents ($40,712.50).  Mr. Koranda will receive the lodestar amount of forty-thousand, seven-hundred and twelve dollars and fifty cents ($40,712.50).

16

2.      Kathryn L. Simpson

Ms. Simpson's lodestar is calculated by multiplying her reasonable rate times the reasonable number of hours worked.  This calculation is two-hundred and thirty dollars ($230.00) per hour times nineteen and two-tenths (19.20) hours, which totals four-thousand, four-hundred and sixteen dollars ($4,416.00).  Ms. Simpson will receive her lodestar of four-thousand, four-hundred and sixteen dollars ($4,416.00).

### VIII.   Costs

Plaintiff also requests costs and expenses for expenditures not properly included in Plaintiff's bill of costs.  (*See* Doc. 101.)  Pursuant to Section 1132(g) of Title 29 of the United States Code, the Court may allow reasonable costs of the action.   In the affidavit of Mr. Koranda, he stated that the costs submitted relate to the work of the pension expert, Theodor Long.  (Koranda Aff. ¶ 6, Doc. 102.)  Specifically, Mr. Koranda stated that these costs deal with the preparation of the expert report, the deposition testimony, and the trial testimony.  (*Id.*)  In the original request for costs, Mr. Koranda requested eight-hundred and twenty-seven dollars and twenty cents ($827.20).  Plaintiff's recent submission of costs and expenses (Doc. 172) details additional costs and expenses.

These costs include one-hundred and three dollars and sixty-eight cents ($103.68) in photocopies and fourteen dollars and two cents ($14.02) in postage.  Costs in the amount of one-hundred and seventeen dollars and seventy cents ($117.70) will be allowed for these costs.

Many of the other costs listed are unclear.   For example, Plaintiff lists costs of two-hundred and ninety-five dollars ($295.00) on August 11, 2000 for "RTT v. IHW."  On

17

June 3, 2003, Plaintiff lists a cost of nine dollars and twenty-six cents ($9.26), but gives

no description of what this cost reflects.  Similarly, a cost on November 7, 2006 is listed in

the amount of three-hundred and forty-four dollars and thirty-three cents ($344.33), but

no description is listed.  A cost in the amount of six dollars ($6.00) is listed as "Travel."

On August 21, 2001, a cost described as "Federal" is listed at one-hundred and fifty

dollars ($150.00).  Finally, Plaintiff lists costs of "Deposition" on August 15, 2000 and

August 20, 2000 in the amount of one-hundred and ninety-five dollars ($195.00) per day.

Although Mr. Koranda's affidavit requested costs of eight-hundred and twenty-

seven dollars and twenty cents ($827.20) for expert expenses, it is unclear which costs of

the three-thousand, five-hundred and ten dollars and eighty-two cents ($3510.82) listed

are related to the expert.  (Doc. 172.)  The list of costs does not specify which costs the

Plaintiff requests.  The descriptions of these costs are so vague that the Court is unable

to link them to the expert.  Therefore, these costs, totaling one-thousand, one-hundred

and ninety-four  dollars and fifty-nine cents ($1194.59) will be denied.

Plaintiff submits filing fees of one-hundred and five dollars ($105.00) for the 2003

appeal, and four-hundred and fifty-five dollars ($455.00) for the 2007 appeal.  Federal

Rule of Appellate Procedure 39 permits costs on appeal in certain circumstances.   Rule

39(a)(4) states that "if a judgment is affirmed in part, reversed in part, modified, or

vacated, costs are taxed only as the court orders."  Rule 39(e) holds that the following

costs on appeal are taxable in the district court: (1) the preparation and transmission of

the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums

paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the

fee for filing the notice of appeal.  In *Campell v. Rainbow City, Alabama*, 209 Fed. App'x

873, 875 (11th Cir. 2006) (non-precedential), the Eleventh Circuit Court of Appeals found

that "in 39(a)(4) situations, a district court may order only those costs that the appellate

court orders, and if the appellate court order fails to explicitly grant a class of costs, the

district court 'must interpret that silence as rejection of those costs.'" *Id.* (quoting *Golden*

*Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d 1328

(11th Cir. 1997)).

In the 2003 appeal, the Third Circuit Court of Appeals affirmed in part and vacated

in part the Court's August 15, 2002 judgment.  (Doc. 147.)  In the 2007 appeal, the Third

Circuit Court of Appeals again affirmed in part and vacated in part the Court's September

5, 2006 judgment.  (Doc. 169.)  Both of these determinations fall within the ambit of Rule

39(a)(4).  Neither order from the Third Circuit Court of Appeals addresses costs.  As per

*Campbell*, the Court will interpret the silence as a rejection of costs, and therefore the

Court will not award costs for the filing fees on the two (2) appeals.

Plaintiff also submits expenses of "Bankruptcy Court Documents (Pacer)" in their

most recent list of expenses.  (Doc. 179.)  However, there is no explanation as to how

bankruptcy documents are relevant to this case.  Therefore, these bankruptcy documents

will not be considered a cost of this litigation.

Therefore, the Court will award costs totaling one-hundred and seventeen dollars

and seventy cents ($117.70) for the photocopies and postage.

**CONCLUSION**

For the above stated reasons, Plaintiff's motion for attorney's costs and fees (Doc.

19

172) will be granted in part and denied in part.

An appropriate Order follows.


July 29, 2008                                    /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RONALD T. TOMASKO,

    Plaintiff,

        v.

IRA H. WEINSTOCK, P.C. et al.,

    Defendants.

NO. 3:98-CV-1978

(JUDGE CAPUTO)

### ORDER

**NOW**, this  29th  day of July 2008, **IT IS HEREBY ORDERED** that Plaintiff Ronald T. Tomasko's Motion for Attorney's Fees (Doc. 172) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1)    Attorney Michael A. Koranda is awarded forty-thousand, seven-hundred and twelve dollars and fifty cents ($40,712.50) in attorney's fees.

(2)    Attorney Kathryn L. Simpson is awarded four-thousand, four-hundred and sixteen dollars ($4,416.00) in attorney's fees.

(3)    Costs are awarded in the amount of one-hundred and seventeen dollars and seventy cents ($117.70).

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge